ANNIE BENNETT AND PHILIP C. BENNETT, HER HUS-
BAND, PLAINTIFFS, v. MARIA CECILIA DERIVAUX
HINRICHSEN, JOHN A. DERIVAUX, MARIA KATHRYN
DERIVAUX, ALOYSIUS J. DERIVAUX AND CHARLES
HUBERT DERIVAUX, DEFENDANTS.

Decided February 26, 1930.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH
and CAMPBELL.

For the rule, *Wolber & Gilhooly*.

*Contra, Fred G. Stickle, Jr.*

PER CURIAM.

There was a verdict in this case at the Essex Circuit in the
sum of $10,000 in favor of the plaintiff Annie Bennett, and
in favor of her husband, Philip C. Bennett, for $1,200.

The case is brought here on a rule to show cause "reserv-
ing exceptions to the refusal of the trial judge at the trial to
order a nonsuit at the close of the plaintiffs' case and to
direct a verdict for the defendants at the close of the whole
case, when moved so to do by counsel of defendants on the
ground of contributory negligence on part of the above-named
plaintiff Annie Bennett."

In plaintiffs' brief under caption, "statement of facts,"
there is a statement as follows: "The summary contained in
appellants' brief is substantially correct."

There is some confusion in the printed record by entitling the brief of defendants as "brief of defendants-appellants," and the same error appears in the brief, on behalf of the plaintiffs, the brief being entitled "brief of plaintiffs-respondents," whereas the case is not before us on appeal, but on rule to show cause.

A summary of the facts in the case is necessary in order to ascertain whether the verdict was against the greater weight of the evidence, which is one of the reasons presented on the question why a new trial should not be granted. The other reasons presented are, newly discovered evidence and errors in the admission and rejection of testimony by the trial judge in the course of the trial.

From the statement of facts as given by counsel of the defendants in his brief, it appears that Annie Bennett brought her action to recover damages against the defendants, as owners of premises known as No. 8 Quitman street, Newark, New Jersey, for injuries sustained by her; which injuries she alleged was the result of a fall on the stairs from the fourth floor to the third floor, on July 13th, 1925. Mrs. Bennett claimed that she was a tenant in the above premises at the time of the accident, and she claims that the defendants were negligent in failing to have the stairway in a fit and safe condition for use.

The answer of the defendants admits ownership of the premises, but denies any negligence on the part of the defendants, and they allege that the premises were in a reasonably safe condition while used by the plaintiff. The answer also sets up that at the time of the alleged fall of the plaintiff Annie Bennett, that neither she nor her husband was a tenant in the premises. The defendants' statement of facts, among other things, sets forth the following: "The premises in question was a four-story apartment and the Bennetts lived on the top floor. The staircase proper was uncovered and consisted of the bare wood, stained and varnished. There was linoleum on the fourth floor landing. There was a small piece of carpet covering the riser from next to the last step in ascending to the fourth floor landing, and this small piece

of carpet was tacked under the linoleum. The carpet was about seven or eight inches in height and about two and one-half feet in width. The balance of the staircase was in the bare wood. It was contended by the plaintiff that there was a tear in this carpet along the edge of the top landing where the linoleum on the top landing overlapped it and under which it was tacked and that as a result of this tear she caught her heel in the opening and was thrown down the stairs to the floor below. Above the top landing and directly over the step in question was a skylight. The plaintiff claimed that there was a dark covering over part of the skylight. This was strenuously denied. In descending from the fourth floor landing to the floor below there were two steps at right angles to the outside wall of the building and then there was one large step forming a curve in the staircase and the remaining steps ran straight to the floor below."

So, on this phase of the case, the question before us for our determination is whether or not the verdicts rendered are so clearly against the weight of the evidence that we can say they were the product of partiality, mistake, passion or prejudice—and that we cannot say after a careful review of the testimony bearing on that branch of the case. The testimony at most is conflicting, and is of such a nature that it was pre-eminently within the province of the jury to decide which version of the circumstances and conditions under which the accident happened, was supported by the greater amount of credible and probative testimony.

We next take up a consideration of the alleged newly discovered evidence. There is nothing before us in the testimony, taken under the rule, which indicates that by the exercise of due dilligence the testimony now sought to be introduced could not have been discovered. Moreover, we have examined the alleged newly discovered evidence and find nothing therein but what was readily ascertainable by the exercise of due diligence before the trial.

The next point argued in the brief of counsel of defendant is, that the trial judge erred in admitting improper evidence. It is contended under reason three, that the trial judge erred

in permitting Walter Rinck, a blind boy, to testify to a certain statement made by Mrs. Bennett in the presence of one Hinrichsen. The record discloses, that after the witness had answered the question propounded to him, without the interposition of any objection by counsel of defendants, counsel of defendants then offered an objection, and the court said, "the answer may remain." There was no motion made to strike out the answer. Even if we overlook that fact, we think the testimony, even if objectionable, was harmless.

The next question, which counsel of defendants claims to have been improperly allowed to be put by the trial judge was a certain question directed to Dr. Keppler, on his direct examination: Q. "What did you find her condition to be at that time? A. I found her condition to be one of extreme" * * * the witness was interrupted by an objection made by counsel of defendant, and a colloquy ensued between court and counsel, and finally resulted in the admission of the testimony. Dr. Keppler was permitted to testify as to Mrs. Bennett's condition in May, 1928. He made an examination of her then and gave her a course of treatment, and it is difficult to see upon what theory the doctor's testimony was not admissible.

Another objection made and argued, in brief of counsel of defendants, is, that the trial judge, against the objection of counsel of defendants, permitted Dr. Donahue to answer the hpothetical question put to him by counsel of plaintiffs.

An examination of the hypothetical question put, makes it quite manifest that it was a proper one, and there was no substance in the objection made to its admission by counsel of defendants.

We have examined the other points made by counsel of defendants, as to the legal propriety of the trial judge to permit counsel of plaintiff to put certain questions to the medical witnesses, and find no merit in any of the objections made.

The rule is discharged, with costs.